Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUN SHI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AMPIO PHARMACEUTICALS, INC., MICHAEL MACALUSO, and THOMAS E. CHILCOTT, <br><br> Defendants. | Case No: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Jun Shi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ampio Pharmaceuticals, Inc. ("Ampio" or the

"Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Ampio between December 14, 2017 and August 7, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Ampio conducts business in this District and the alleged misstatements entered and subsequent damages took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES**

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Ampio common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

7.    Defendant Ampio is a Delaware corporation headquartered in Englewood, Coloardo. It is a biopharmaceutical company which focuses on the development of therapies for the treatment of prevalent inflammatory conditions in the United States. The Company's stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "AMPE."

8.    Defendant Michael Macaluso ("Macaluso") has served as Ampio's Chief Executive Officer ("CEO") and Chairman of the Board at all relevant times.

9.    Defendant Thomas E. Chilcott ("Chilcott") has served as Ampio's Chief Financial Officer ("CFO") and Treasurer since around August 2017 and serves as the Company's Secretary.

10.    Defendants Macaluso and Chilcott are collectively referred to hereinafter as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15.    The Company is developing Ampion, a low molecular anti-inflammatory biologic, for the treatment of pain due to osteoarthritis of the knee.

16.    According to reports, two previous Phase 3 trials for Ampion failed in 2015 and 2016.

### Materially False and Misleading
### Statements Issued During the Class Period

17.    On December 14, 2017, Ampio announced that its Phase 3 trial, AP-003-C, was successful, meeting both its primary and secondary endpoints:

AMPIO PHARMACEUTICALS REPORTS POSITIVE RESULTS FOR BOTH PRIMARY AND SECONDARY ENDPOINTS OF

Class Action Complaint for Violation of the Federal Securities Laws

PIVOTAL PHASE 3 TRIAL OF AMPION™ IN SEVERE OSTEOARTHRITIS-OF-THE KNEE (OAK)

* * *

ENGLEWOOD, Colo., December 14, 2017 — *Ampio Pharmaceuticals, Inc. (NYSE MKT: AMPE) today reported that the Phase 3 clinical trial of Ampion™ met its primary endpoint with 71% of Ampion™ treated patients meeting the OMERACT-OARSI responder criteria, which exceeds the physician reported threshold of 30% for a meaningful treatment in severe osteoarthritis of the knee (p < 0.001).*

* * *

If approved, Ampion™ would be the first intra-articular injection to treat the signs and symptoms of patients with severe osteoarthritis of the knee (Kellgren-Lawrence x-ray grade 4). In order to support a label for signs and symptoms, Ampion™ was asked to demonstrate clinical efficacy in a composite response of pain, function and be supported by quality of life.

Ampion™ was well tolerated with treatment-emergent adverse events (TEAEs) comparable to those of placebo in all single-injection studies of Ampion™. There were no drug-related serious TEAEs associated with the Ampion™ arm. The safety and tolerability profile of Ampion™ is consistent with previous studies. To date, Ampion™ has been given to over 900 patients with no reported drug-related serious TEAEs.

* * *

*"We are very pleased with the positive Phase 3 data as we believe that Ampion™ will address an unmet medical need, providing severely diseased patients a non-opioid option that not only reduces pain, but also improves function and quality of life in a meaningful way" said Michael Macaluso, Chairman and CEO, Ampio Pharmaceuticals. "We are hopeful that Ampion™ will serve as a safe and effective treatment for an incurable, progressive disease that afflicts 21 million people in the U.S. and over 200 million people worldwide who suffer from osteoarthritis. We look forward to working closely with the U.S. Food and Drug Administration (FDA) as we prepare to submit our Biologics License Application (BLA) for Ampion™."*

(Emphasis added.)

- 5 -

18.    On January 8, 2018, Ampio filed a Form 8-K with the SEC, attaching a
slide deck used to update potential collaborators and attending shareholders at the J.P.
Morgan Healthcare Conference, "the largest and most informative healthcare
investment symposium in the industry."

19.    Ampio's presentation states that the FDA "requires 2 pivotal trials in
support of a BLA submission [for Ampion,]" that the "FDA [previously] designated
AP-003-A as a pivotal trial in support of a BLA for Ampion[,]" and that the "[r]ecent
AP-003-C study . . . [which] successfully met its primary endpoint . . . serves as the
second pivotal trial in support of BLA[.]"

20.    Certain slides from that presentation state, in relevant part:

### Executive Summary

- Ampion™ is a novel biologic set to address an unmet medical need and significant
  treatment gap in severe osteoarthritis of the knee (OAK)
  - FDA acknowledged there are no licensed or approved therapies to address this population
- Ampio has successfully completed two pivotal Phase 3 trials for the signs and symptoms
  severe OAK
  - Pivotal trial design examined response in pain, function and patient global assessment
- Potential product label addresses pain, function and patient global assessment
  - Clinical results show that treatment with Ampion results in a 71% responder rate in a composite
    endpoint of pain, function and quality of life
- Ampion is safe and well tolerated and is being developed for both short-term and
  continuous long-term use
  - Safety supported by single and multiple-injection studies in over 2,000 patients
  - FDA-approved Human Serum Albumin (HSA) is the sole starting material
- Ampion is the first therapy to consistently demonstrate significant, safe and meaningful
  improvement in all core OAK efficacy measurements for severe OAK
- Ampion is a platform therapy and is anticipated to achieve blockbuster potential in the US



2

Class Action Complaint for Violation of the Federal Securities Laws

**Ampion is a first-in-class, injectable biologic treatment for the signs and symptoms of severe OA of the knee and has successfully completed two pivotal studies**

- Ampion is a low molecular weight (<5 kDa) ultra filtrate of 5% commercial human serum albumin for the treatment of signs and symptoms of severe OAK
  - Single 4mL intra-articular injection with demonstrated efficacy at 12 weeks in multiple clinical studies
- Ampion is the first drug to demonstrate significant reduction in pain as well as improvement in function and patient global assessment in severe OAK
- Ampion has successfully completed two pivotal studies required for BLA submission:
  - ✓ **AP-003-A (Phase 3 single injection)** – single dose of Ampion demonstrated statistically significant pain reduction vs. saline at 12 weeks across all OAK severities
    - "Upon review of the dataset received on November 5, 2013, FDA concludes that Study AP-003-A can be considered as one of the two 'pivotal' trials required in support of a BLA." – FDA Minutes Nov. 2013
  - ✓ **AP-003-C (Phase 3 single injection)** – single dose of Ampion demonstrated statistically significant effect and met primary endpoint with 71% of patients meeting OMERACT-OARSI responder criteria
    - AP-003-C serves as a second statistically significant pivotal study for BLA submission
- Ampio has a clear path to approval and incorporated FDA guidance when designing AP-003-C to maximize regulatory and commercial success
- Novel MOA of Ampion biologic reduces pain signaling, inflammation and is involved in the promotion of healing
- Safe and well tolerated with no drug-related serious adverse events
  - Most common AE's include: arthralgia injection site pain, headache, joint stiffness

| Throughout its clinical development history, Ampion has demonstrated: | | |
|---|---|---|
| ✓ Consistent patient outcomes across all trials | ✓ Safe and well tolerated | ✓ High relative efficacy in severe patients |



11

---

**Ampion has completed two pivotal studies required for FDA filing as well as several additional studies supporting efficacy as both a single and repeat injection**

| | Study | Design |
|---|---|---|
| **Pivotal Studies** | **AP-003-A**<br>Phase 3, n=329<br>(Mar 2013 - Aug 2013) | • **Endpoint:** WOMAC A pain reduction at 12 weeks compared to saline<br>• **Single IA injection**<br>  – 4 mL; 10 mL Ampion vs. 4 mL, 10 mL Saline |
| | **AP-003-C**<br>Phase 3, n=168<br>(Jun 2017 - Dec 2017) | • **Endpoint:** OMERACT-OARSI responder rate at 12 weeks >30%<br>• **Single IA injection**<br>  – 4 mL Ampion vs. 4 mL saline at ratio of 6:1 |
| **Supportive** | **AIK**<br>Phase 1/2b<br>(May 2011– Apr 2012) | • **Endpoint:** WOMAC A pain reduction at 12 weeks<br>• **Single IA injection**<br>  – 4 mL Ampion<br>  – 4 mL saline |
| | **AP-004**<br>Phase 3<br>(Jan 2014– Jun 2014) | • **Endpoint:** WOMAC A pain reduction at 12 weeks<br>• **Single IA injection**<br>  – 4 mL Ampion vs. 4 mL saline |
| | **AP-007**<br>Phase 2<br>(Jun 2014– Feb 2015) | • **Endpoint:** WOMAC A pain reduction at 20 weeks<br>• **Multiple IA injections**<br>  – 4 mL Ampion vs. 4 mL saline<br>  – IA injections (3 total) administered on day 0, week 2, and week 4 |
| | **AP-008**<br>Phase 3<br>(Oct 2014– Apr 2015) | • **Endpoint:** WOMAC A pain reduction at 20 weeks<br>• **Multiple IA injections**<br>  – 4 mL Ampion vs. 4 mL saline<br>  – IA injections (3 total) administered on day 0, week 2, and week 4 |
| | **AP-003-B**<br>Phase 3<br>(Sept 2015– Jun 2016) | • **Endpoint:** WOMAC A pain reduction at 12 weeks<br>• **Single IA injection**<br>  – 4 mL Ampion vs. 4 mL saline |

**FDA Guidance**

- FDA (CBER division) requires 2 pivotal trials in support of a BLA submission
- FDA designated AP-003-A as a pivotal trial in support of a BLA for Ampion
  - Primary endpoint was reduction in pain compared to saline control at 12 weeks

  *"We accept the results of Study AP-003-A as one of the two phase 3 trials required to support a BLA."*
  *– FDA Minutes July 2015*

- Recent AP-003-C study serves as the second pivotal trial in support of a BLA
  - Primary endpoint was OMERACT-OARSI response against 30% meaningful threshold
  - Secondary endpoints included a composite endpoint of pain and function (OARSI 'controlled' responder), PGA response and comparison to historic saline

**Ampion has demonstrated safety and efficacy in 2,007 patients across seven clinical trials and has completed two pivotal studies required for BLA submission**

WOMAC A pain scale for all studies; VAS pain scale used in AIK. P values based mean change of primary endpoint as defined in the protocol. J Bar-Or, et al. A randomized clinical trial to evaluate two doses of an intraarticular injection of LMWF-5A in adults with pain due to osteoarthritis of the knee. Plos One. 2014 Feb 9(2). / Schwappach, et al. Preliminary trial of intraarticular LMWF-5A for osteoarthritis of the knee. Orthopedics. 2017 Jan 40(1).

12

- 7 -

Class Action Complaint for Violation of the Federal Securities Laws







- 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25







26    21.    On March 6, 2018, the Company filed its annual report for the fiscal year

27  ended December 31, 2017 on Form 10-K (the "2017 10-K") with the SEC, which

28  provided the Company's annual financial results and position. The 2017 10-K was

signed by Defendants Macaluso and Chilcott. The 2017 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Macaluso and Chilcott attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud. The 2017 10-K stated that the Company's "disclosure controls and procedures as of the end of the period covered by this report were effective."

22.    In the 2017 10-K, the Company reported positive results for its AP-003-A and AP-003-C studies, stating in relevant part:

**SPRING Pivotal Trial (AP-003-A)**

In the second half of 2013, we announced the results of our positive single injection Phase III pivotal trial, the SPRING study. This study of Ampion focused on the treatment of pain due to osteoarthritis of the knee. The results of this study establish the safety and efficacy of Ampion for reduction of pain due to OA of the knee at 12 weeks after a single intra-articular injection.

* * *

**AP-003-C**

In December 2017, we reported positive results for both the primary and secondary endpoints of our confirmatory single injection Phase III clinical trial of 168 patients. The 12-week study evaluated the responder rate of Ampion-treated patients as defined by the Osteoarthritis Research Society International ("OARSI") Standing Committee for Clinical Trials Response Criteria Initiative (OMERACT), which included pain, function, and patient global assessment in support of a label for the treatment of the signs and symptoms of severe OAK. Ampion met its primary endpoint with 71% of Ampion treated patients meeting the OMERACT-OARSI responder criteria, which exceeds the physician reported threshold of 30% for a meaningful treatment in severe osteoarthritis of the knee. Responders experienced, on average, a 53% decrease in pain as measured by WOMAC A and a 50% improvement in function as measured by WOMAC C and a 45% improvement in quality of life as

Class Action Complaint for Violation of the Federal Securities Laws

measured by Patient Global Assessment (PGA). In the secondary endpoints, Ampion treated patients achieved statistical significance in a composite endpoint of pain and function from baseline in both categories at 12 weeks, which was supported by an increase in quality of life as measured by patient global assessment (PGA). When treated with Ampion, patients experienced significant improvement in a composite endpoint of pain and function compared to all severely diseased saline-treated patients in historical Ampion phase III clinical trials. We believe this data supports Ampion's ability to address an unmet medical need and provide patients with a meaningful, non-opioid treatment that improves pain, function and quality of life.

23.    The statements contained in ¶¶17-22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the FDA would find Ampio's AP-003-C Phase 3 clinical trial inadequate and not well-controlled; (2) as a result, Ampio had not successfully completed two pivotal clinal trials for Ampion; (3) consequently, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

24.    On August 7, 2018, after the market closed, Ampio announced updated business disclosures relating to its AP-003-A and AP-003-C trials, stating in relevant part:

With respect to FDA review of Ampion and our completed and ongoing clinical trials, including the AP-003-A and AP-003-C trials, we have been and expect to continue to be engaged in meetings and correspondence with the FDA about the product, its manufacturing, and the preclinical and clinical testing necessary to support Ampion's safety and efficacy. ***We met with the FDA in July 2018 and have received a letter in response thereto. In the letter, the FDA stated that it considers the AP-003-A trial to be an adequate and well-controlled clinical*** trial that provides evidence of effectiveness of Ampion and can contribute to the substantial evidence of

Class Action Complaint for Violation of the Federal Securities Laws

effectiveness necessary for approval of a BLA, ***but that as a single trial the AP-003-A study alone does not appear to provide sufficient evidence of effectiveness to support a BLA.***

***Despite our belief that the APC-003-C trial design was based on FDA guidance and feedback and consistent with FDA precedent for similar products (in intended use, in origin, and in regulatory pathway), which we reiterated with the FDA multiple times, the FDA does not consider the AP-003-C trial to be an adequate and well-controlled clinical trial.*** The FDA recommended that we perform an additional randomized trial with a concurrent control group and that we request a Special Protocol Assessment to obtain FDA concurrence of the trial design before beginning the study. We plan to continue to discuss with the FDA the necessity of conducting this additional trial, as we believe the current body of data is sufficient to submit the BLA.

(Emphasis added.)

25.    On this news, shares of Ampio fell $2.25 per share or over 78% to close at $0.61 per share on August 8, 2018. Shares continued to fall another 21.3% the next day.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Ampio during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ampio securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this

1  time and can be ascertained only through appropriate discovery, Plaintiff believes that

2  there are hundreds or thousands of members in the proposed Class. Record owners

3  and other members of the Class may be identified from records maintained by the

4  Company or its transfer agent and may be notified of the pendency of this action by

5  mail, using the form of notice similar to that customarily used in securities class

6  actions.

7      28.    Plaintiff's claims are typical of the claims of the members of the Class as

8  all members of the Class are similarly affected by Defendants' wrongful conduct in

9  violation of federal law that is complained of herein.

10     29.    Plaintiff will fairly and adequately protect the interests of the members

11  of the Class and has retained counsel competent and experienced in class and

12  securities litigation. Plaintiff has no interests antagonistic to or in conflict with those

13  of the Class.

14     30.    Common questions of law and fact exist as to all members of the Class

15  and predominate over any questions solely affecting individual members of the Class.

16  Among the questions of law and fact common to the Class are:

17     •    whether the federal securities laws were violated by Defendants' acts as

18        alleged herein;

19     •    whether statements made by Defendants to the investing public during

20        the Class Period misrepresented material facts about the financial condition,

21        business, operations, and management of the Company;

22     •    whether Defendants' public statements to the investing public during the

23        Class Period omitted material facts necessary to make the statements made, in

24        light of the circumstances under which they were made, not misleading;

25     •    whether the Individual Defendants caused the Company to issue false

26        and misleading SEC filings and public statements during the Class Period;

27     •    whether Defendants acted knowingly or recklessly in issuing false and

28        misleading SEC filings and public statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- whether the prices of Ampio securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Ampio securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Ampio securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Class Action Complaint for Violation of the Federal Securities Laws

33.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

35.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- • engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Ampio securities during the Class Period.

39. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

40. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

41. As a result of the foregoing, the market price of Ampio securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Ampio securities during the Class Period in purchasing Ampio securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

42.    Had Plaintiff and the other members of the Class been aware that the market price of Ampio securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Ampio securities at the artificially inflated prices that they did, or at all.

43.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

44.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Ampio securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

45.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

47.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

48.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ampio securities.

49.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 25, 2018                    Respectfully submitted,


                                          **THE ROSEN LAW FIRM, P.A.**

                                          By: /s/Laurence M. Rosen
                                          Laurence M. Rosen, Esq. (SBN 219683)
                                          355 S. Grand Avenue, Suite 2450
                                          Los Angeles, CA 90071
                                          Telephone: (213) 785-2610
                                          Facsimile: (213) 226-4684
                                          Email: lrosen@rosenlegal.com


                                          *Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws